JUSTICE TRIEWEILER
concurring.
¶121 I concur with the majority opinion, except for that part which reversed the holding in Indendi v. Workmen (1995), 272 Mont. 64, 899 P.2d 1085, that violation of Montana’s legal fencing requirements found at § 81-4-101 is negligence per se in the context of a livestock-motor vehicle collision.
¶122 The majority concludes that violation of the legal fence requirement was not negligent per se in the context of a livestock-motor vehicle collision because motor vehicle operators are not members of the class for which the legal fence requirement was enacted. I disagree and conclude that the majority’s interpretation of the statute’s purpose is far too narrow. Plaintiffs were within the class of persons that legal fencing requirements were enacted to protect because they are victims of cattle roaming in an area where it is required that they be contained. It is not necessary that the legislature foresee every manner in which prohibited acts or omissions could cause injury before negligence as a matter of law can be found.
¶123 As stated in Indendi, the broad purpose of the legal fence requirement is to assure that livestock are "... not free to roam and to cause harm to persons and property or to breed with livestock of others.” Indendi, 272 Mont. at 72, 899 P.2d at 1090. I do not believe it was necessary for the legislature to foresee each specific type of harm that wandering livestock could cause before principles of negligence per se are applicable.
*134 ¶ 124 The maj ority’s sweeping conclusion that legal fences were only required to keep livestock out rather than to keep livestock in is discredited by other provisions found in Title 81, Chapter 4, Part 1. For example, § 81-4-103, MCA, provides:
Any person constructing or maintaining any fence of any kind not described in 81-4-101 is liable in a civil action for all damages caused by reason of injury to stock resulting from such defective fence.
¶125 Section 81-4-104, MCA, provides that owners of barbed wire fences which are in disrepair are liable to owners of livestock injured thereby, when after notice, the fence is not repaired. Furthermore, Part 2 provides penalties and civil liability when prohibited animals are permitted to run at large. Section 81-4-202, MCA. Part 3 provides penalties for persons who allow livestock to run at large in a herd district. Section 81-4-306, MCA. These statutes, when read together, clearly suggest that the legal fencing requirement was intended for more than to protect fenced land from roaming livestock. The fencing requirements were also obviously enacted to protect others from livestock which by law, must be contained. That includes cattle found in herd districts.
¶126 I would conclude that to start limiting the laws protection from roaming livestock to only certain classes of tort victims without an expressed intention by the legislature to do so, is far too narrow an application of the legal fencing requirement. For these reasons, I would follow that part of the Indendi decision which held that in the context of livestock/motor vehicle collisions, failure to provide a legal fence is negligence per se and I dissent from the majority’s decision to reverse that part of the Indendi holding.
JUSTICE HUNT joins in the foregoing concurring opinion.